IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: ) <br> 2113 ORCHARD STREET, APT. B ) <br> MUNHALL, PA 15120 AND ALL ) <br> SAFES/PHONES LOCATED THEREIN ) <br> ) <br> ) | MAGISTRATE NO. <br> [UNDER SEAL] 13.0229M |
| IN THE MATTER OF THE SEARCH OF: ) <br> 339 E. 12th AVENUE, APT. 4 ) <br> HOMESTEAD, PA AND ALL ) <br> SAFES/PHONES LOCATED THEREIN ) <br> ) <br> ) | MAGISTRATE NO. <br> [UNDER SEAL] 13.0229M |
| IN THE MATTER OF THE SEARCH OF: ) <br> 1003 KENNEDY AVENUE ) <br> DUQUESNE, PA 15110 AND ALL ) <br> SAFES/PHONES LOCATED THEREIN ) <br> ) <br> ) | MAGISTRATE NO. <br> [UNDER SEAL] 13.0230M |
| IN THE MATTER OF THE SEARCH OF: ) <br> 154 WEST 15th AVENUE ) <br> HOMESTEAD, PA 15120 AND ALL ) <br> SAFES/PHONES LOCATED THEREIN ) <br> ) <br> ) | MAGISTRATE NO. <br> [UNDER SEAL] 13.0231M |
| IN THE MATTER OF THE SEARCH OF: ) <br> 234 E. 12th AVENUE ) <br> HOMESTEAD, PA 15120 AND ALL ) <br> SAFES/PHONES LOCATED THEREIN ) <br> ) <br> ) | MAGISTRATE NO. 13.0232M <br> [UNDER SEAL] |

1

## INTRODUCTION

1.    Your Affiant is JOHN DZIEDZIC, Special Agent, Federal Bureau of Investigation, Pittsburgh, Pennsylvania, United States Department of Justice, hereinafter referred to as the Affiant, being duly sworn state that:

2.    I have been employed as a Special Agent of the FBI for over four years, and have been assigned to the Pittsburgh Division, Organized Crime/Gang Unit since July 2009.  Prior to my employment with the FBI, I was a family law and criminal defense attorney in the state of Maryland.  During my tenure with the FBI, I have been assigned to investigations targeting organizations involved in drug trafficking offenses in the Western District of Pennsylvania (WDPA).  I received basic training at the FBI Academy located in Quantico, Virginia. I have written and executed search and seizure warrants which have resulted in the seizure of illegal drugs and evidence of drug violations.  I have written Title-III affidavits for the use of investigating large drug organizations.  I have supervised the activities of informants who have provided information and assistance in the federal drug prosecution of drug offenders.  Based upon the above experience, I am familiar with the *modus operandi* of persons involved in the illegal

2

distribution of controlled substances, and I understand the legal requirements that need to be met to in order to obtain a search and seizure warrant.

3.     I make this application and affidavit based on my own experience in this investigation as well as my interactions and discussions with other members of law enforcement.

4.     This application and affidavit are submitted in support of search warrants for the residences of individuals associated with members of the violent, heroin-dealing Uptown gang, as well as those who supply them with heroin. This violent gang -- which has engaged in shootings and abductions -- distributes heroin on the streets of Homestead.  On March 6, 2013, a federal grand jury sitting in the Western District of Pennsylvania indicted 34-persons, which included the members of Uptown and their heroin suppliers.  These indictments are as follows:

> a. "Bryce Harper" conspiracy: BRYCE HASRPER, LACIE
> HARPER, DIAMANTIA SERRANO, RYAN HARPER, JAMAR HARPER, and
> SETH LINDSAY.  These individuals were indicted for
> conspiracy to distribute and possess with intent to
> distribute one kilogram of heroin from July 2012 to
> February 2013, in violation of Title 21, U.S.C., Section
> 846, amongst other narcotics crimes.

b. "Andre Corbett" conspiracy: ANDRE CORBETT, STERLING
MARSHALL, TIREAL WHEELER, and JORDAN MURPHY.  These
individuals were indicted for conspiracy to distribute
and possess with intent to distribute one kilogram of
heroin from May 2012 to February 2013, in violation of
Title 21, U.S.C., Section 846, amongst other narcotics
crimes.

c. "Thomas Hopes" conspiracy: THOMAS HOPES, KEITH HARRIS,
WILLIAM McDONALD, ANTHONY SMITH, and HAKEEM HARRIS.
These individuals were indicted for conspiracy to
distribute and possess with intent to distribute one
kilogram of heroin from May 2012 to February 2013, in
violation of Title 21, U.S.C., Section 846, amongst other
narcotics crimes.  In addition, THOMAS HOPES, KEITH
HARRIS, GREGORY HARRIS, JR., STERLING MARSHALL, and
RONNELL ROBINSON were indicted for violations of Title
18, U.S.C., Section 924(c)(1)(A)(i), (ii), and (iii) for
using, carrying, brandishing, and discharging a firearm
in furtherance of a drug trafficking crime and a crime of
violence.

d. "Jay Germany" conspiracy: JAY GERMANY, BRADY HALL,
JAQUAN WASHINGTON-MCNEIL, HECTOR GUADALUPE, JR., THOMAS
MARTINEZ, and SANTINO DREW. These individuals were
indicted for conspiracy to distribute and possess with

4

intent to distribute one kilogram of heroin from May 2012 to February 2013, in violation of Title 21, U.S.C., Section 846, amongst other narcotics crimes.

e. "Troy Anderson" conspiracy: TROY ANDERSON, MARK FELDER, and DORIANNE HARRIS.  These individuals were indicted for conspiracy to distribute and possess with intent to distribute one kilogram of heroin from May 2012 to February 2012, in violation of Title 21, U.S.C., Section 846.

f. "Brandon Thompson" conspiracy: BRANDON THOMPSON, JOSEPH THOMPSON, JAMES WALKER, ANTONIO HARDIN, RICHARD WOOD, GREGORY HARRIS, and LUTHER HARPER.  These individuals were indicted for conspiracy to distribute and possess with intent to distribute one kilogram of heroin from April 2012 to February 2013, in violation of Title 21, U.S.C., Section 846, amongst other crimes.  In addition, BRANDON THOMPSON and ED COOK were indicted for violations of Title 18, U.S.C., Section 924(c)(1)(A)(i), (ii), and (iii) for using, carrying, brandishing, and discharging a firearm in furtherance of a drug trafficking crime.  ANTONIO HARRIS was also indicted for possessing a firearm in furtherance of a drug trafficking crime, in violation of Title 18, U.S.C., Section 924(c)(1)(A)(i).

5

5.    Collectively, the abovementioned individuals are known as the "Target Suspects."  This affidavit is being submitted for the limited and specific purpose of supporting an application for search and seizure warrants.  Your Affiant has not, therefore, included every fact known to him concerning the investigation.

6.    As explained below, the heroin trafficking of the Target Suspects and others has led to a multi-agency investigation in the Western District of Pennsylvania.  The Target Suspects, who were and are currently engaged in the sale of heroin have also used, brandished, and discharged firearms during and in relation to their heroin trafficking activities.

### SEARCH LOCATIONS AND EVIDENCE TO BE SEIZED

7.    As explained below, there is probable cause to conclude that evidence of the above described crimes will be found in the following locations (hereafter occasionally referred to as the "Search Locations").  Your Affiant is seeking search warrants for the following locations:

> a. **2113 Orchard Street, Apt. B, Munhall, PA 15120**: This is a red-brick apartment building, with white siding above the apartment. The apartment is the rear bottom apartment with a white steel door to the entrance.  2113 is affixed to the mailbox in front of apartment building.

6

This is the residence of indicted defendant **Jaquan Washington**.

b. **339 E. 12th Avenue, Apt. 4, Homestead, PA 15120**: This is a yellow-brick three-story building, with a balcony on the front portion of the building. This is the apartment of indicted defendant **Thomas Hopes**.

c. **1003 Kennedy Avenue, Duquesne, PA 15110**: This is a two and a half story red brick building, with "1003" affixed to the front door. This is the residence of indicted defendant **Mark Felder**.

d. **154 West 15th Avenue, Homestead, PA 15120**: This is a two-story white house. This is the home of indicted defendant **Hakeem Kirby**.

e. **234 E. 16th Avenue, Homestead, PA 15120**: This is a two-story wood frame house with white aluminum siding, green trim around the windows and porch and railing. This is the residence of indicted defendant **Luther Harper**.

8. The above-mentioned locations are the residences of persons who have been indicted for trafficking in one kilogram or more of heroin. Your Affiant is aware that people who are involved in distributing illegal drugs commonly store or retain evidence of their involvement in drug trafficking at their residences or at the residences of relatives or other trusted associates, and courts, including the Third Circuit Court of

7

Appeals, have recognized this. *See United States v. Whitner*, 219
F.3d 289, 297-98 (3d Cir. 2000) (collecting cases); *United
States v. Burton*, 288 F.3d 91, 103-104 (3d Cir. 2002)
(explaining that it is a common sense proposition that drug
dealers commonly keep evidence of their drug-dealing activities
at their residences, and direct evidence linking a residence to
a particular type of criminal activity is not required to
establish probable cause to search the residence for evidence of
that criminal activity).

　　　　9.　　Your Affiant is further aware through his training and
experience from investigating firearms violations that
individuals involved with firearms and in particular from your
Affiant's participation in the execution of search warrants
authorizing the seizure of firearms, that those who own and
possess firearms and ammunition generally maintain possession of
them for long periods of time. Persons who own firearms
generally keep them on their persons, in their residences and
motor vehicles, or in places where they store their personal
property. The reasons the owners of firearms generally maintain
and preserve them over a long period of time include the facts
that firearms are somewhat expensive, there is an administrative
delay in buying them (and this is particularly true for
convicted felons who must obtain firearms by subterfuge), and
firearms do not easily wear out.

10.   In your Affiant's experience, firearms are not depleted through use, nor are they exchanged soon after being obtained.  Firearms are like expensive tools which their owners keep and maintain over long periods of time.  The reasons owners of firearms generally maintain firearms and ammunition in and about their home or vehicle include the facts that maintenance of them in and about the home or vehicle permits easy access to the firearms, and firearms and ammunition must be maintained in an environment where they will be secure from theft, as well as safe from rust and corrosion.  In the residence, in the vehicle and on the person, the firearm is readily available in the event the need for its use arises.

11.   Your Affiant is aware, based upon my training and experience, that the following kinds of evidence have been recovered in a substantial number of residential and vehicle searches executed in connection with drug trafficking and firearms investigations:

a.  controlled substances, such as heroin;

b.  paraphernalia for packaging, processing, diluting, weighing, and distributing controlled substances, such as scales, funnels, sifters, grinders, glass panes and mirrors, razor blades, plastic bags, "stamp bags", microwave ovens, heat-sealing devices, and dilutants such

as mannitol, mannite, inositol, fentanyl, and vitamin
B12;

c. books, records, receipts, notes, ledgers, and other
papers relating to the distribution of controlled
substances and to monetary transactions involving the
proceeds from the sale of controlled substances;

d. personal books and papers reflecting names,
addresses, telephone numbers, and other contact or
identification data relating to the distribution of
controlled substances, money laundering, and the criminal
use of communication facilities;

e. cash, currency, and records relating to the
generation of income from the sale of controlled
substances and the expenditure of such income, including
money orders, wire transfers, cashier's checks and
receipts, bank statements, passbooks, checkbooks, and
check registers, as well as consumer items such as
expensive televisions and other electronic equipment,
high-end vehicles, precious metals such as gold and
silver, and precious gems such as diamonds (this evidence
often is located in a safe) -- unexplained wealth is
probative evidence of crimes motivated by greed,
including trafficking in controlled substances.;

10

    f.  documents indicating travel in interstate and foreign commerce, such as travel itineraries, plane tickets, boarding passes, motel and hotel receipts, passports and visas, credit card receipts and telephone bills;

    g.  computers, cellular telephones, palm pilots, and/or other electronic media utilized for communication and data-saving purposes, as well as documents relating thereto;

    h.  firearms, ammunition, and other dangerous weapons; and

    i. identification evidence and/or indicia (such as cancelled mail, deeds, leases, rental agreements, photographs, bills, and identification documents) that tend to identify the person(s) in residence, occupancy, control, or ownership of subject premises.

    12.  Based upon your Affiant's training and experience, as well as the collective knowledge and experience of other agents and officers associated with this investigation, your Affiant is aware that it is generally a common practice for drug traffickers to store their drug inventory, drug-related paraphernalia, and drug-related and personal records (as described above) in their residences and vehicles or in the residences of relatives or other trusted associates. Additionally, to evade law enforcement detection, drug dealers

will often use "stash houses" or "trap houses," which are
unaffiliated houses that exist solely to store a dealer's drugs
in order to evade law enforcement detection.

13.   Because drug traffickers in many instances will
"front" (that is, sell on consignment) controlled substances to
their clients, and/or will be "fronted" controlled substances
from their suppliers, such record keeping is necessary to keep
track of amounts paid and owed, and such records will also be
maintained close at hand so as to readily ascertain current
balances and to keep track of how proceeds are being expended.
Often drug traffickers keep "pay and owe" records to show
balances due for drugs sold in the past ("pay") and for payments
expected ("owe") as to the traffickers' supplier(s) and the
traffickers' dealer(s).  Additionally, drug traffickers must
maintain telephone and address listings of clients and suppliers
and must keep them immediately available to efficiently conduct
their drug trafficking business.

14.   It is also a generally common practice for traffickers
to conceal at their residences large sums of money, either the
proceeds from drug sales or moneys to be used to purchase
controlled substances.  Drug traffickers often make use of wire
transfers, cashier's checks, and money orders to pay for
controlled substances.  Evidence of such financial transactions
and records relating to income and expenditures of money and

12

wealth in connection with drug trafficking and money laundering would also typically be maintained in the residences of those involved in selling drugs or in the residences of relatives or trusted associates.

15.    Typically, drug traffickers possess firearms, ammunition, and other dangerous weapons in their residences, businesses, and automobiles to protect their proceeds, product and person from others who might attempt to rob them. Typically, drug traffickers maintain possession of the firearms for extended periods of time.

16.    When drug traffickers amass proceeds from the sale of drugs, they often attempt to launder/"legitimize" these profits, or otherwise conceal them from discovery by law enforcement.   In an effort to accomplish these goals, drug traffickers often place assets, such as vehicles and residences, in the names of other persons to conceal their true ownership and the manner in which they were acquired.  Records reflecting the implementation of such deceptive practices, such as deeds, titles, and service records, are likely to be found either at the residence of the drug trafficker or at the residence of the person in whose name the asset is listed.

17.    Your Affiant is aware that drug traffickers sometimes take trophy photographs of their drugs and drug proceeds and retain them in their residences.   Your Affiant is aware that

13

drug traffickers, like law-abiding citizens, sometimes take photographs of themselves with their friends, relatives, and associates and keep the photographs in their residences.   When they are taken or retained by drug traffickers, such photographs can be evidence, or can lead to evidence, of drug trafficking and money laundering by identifying closely associated people who are actively assisting and/or supporting the drug trafficking activity.

        18.   Evidence of drug crimes can be found in the electronic media referenced in the preceding paragraph.   Such evidence can include telephone numbers as well as incriminating communications via emails or instant messages.   In addition, those involved in drug trafficking crimes commonly communicate using multiple cellular telephones.   Contemporaneous possession of multiple cellular telephones is, therefore, evidence of drug trafficking.   Moreover, the particular numbers of and the particular numbers dialed by particular cellular telephones can be evidence of drug trafficking, particularly in a case involving the interception of communications between drug traffickers.   Such numbers can confirm identities of particular speakers and the occurrence of certain events.   As with most electronic/digital technology items, communications made from an electronic device, such as a computer, are often saved or stored on the device.

19. Your Affiant knows that heroin is generally brought into the Pittsburgh area in the following two ways: either in bulk quantities, often referred to a "raw heroin", which is often packaged like cocaine (pressed into a block form weighing an average of anywhere up to one kilogram per block) and then broken down to smaller quantities upon arrival, or the heroin is already packaged in bags known as "stamp bags", which are usually white, waxy bindles the size of a postage stamp. Ten (10) of these stamp bags wrapped together are referred to as a "bundle" and five (5) bundles are referred to as a "brick". When the heroin is brought to the area in the manner detailed above, it is often sold in brick quantities, meaning fifty (50) stamp bags at a time. The average amount of heroin in one (1) stamp bag is approximately 0.02 grams. In addition, heroin suppliers mark their respective products with stamps on the outside of the stamp bags. For example, one heroin supplier may stamp a blue star on every stamp bag with their product, while a different supplier may stamp the word "Diesel" on their product. This is a form of marketing and the heroin suppliers are often asked by their customers what type of heroin they are selling, referring to the stamp on the outside of the bag.

20. Your Affiant's awareness of these drug trafficking practices, as well as your Affiant's knowledge of drug use and distribution techniques as set forth in this Affidavit, arise

15

from the following: a) your Affiant's involvement in prior drug investigations and searches during his career, as previously described; b) your Affiant's involvement on a number of occasions in debriefing confidential informants and cooperating individuals in prior drug investigations, as well as what other agents and police officers have advised your Affiant of when relating the substance of their similar debriefings and the results of their own drug investigations; c) discussions with members of the FBI and/or other federal, state, and local law enforcement officers, both about the facts of this case in particular and about trafficking in general; and d) other intelligence information provided through law enforcement channels.

## THOMAS HOPES RESIDENCE

21. On the morning of March 14, 2013, at 6:00 a.m., law enforcement executed an arrest warrant at the residence of Thomas Hopes. Indicted defendant Thomas Hopes was arrested inside of his one-bedroom apartment, which is located at **339 East 12th Avenue, Apt. 4 in Homestead, PA 15120**. A protective sweep was then done of the apartment concurrent with Hopes' arrest. During that protective sweep, law enforcement found a Glock handgun, serial number CBY608, under Hopes' bed in his bedroom. The gun was loaded with ammunition and there was a

round in the chamber, indicating that the firearm was ready to
be used and employed by Hopes.

22.  Hopes is a convicted felon, and he is prohibited by
law from having firearms and ammunition. See 18 U.S.C. Section
922(g)(1).  Hopes has also been indicted in this case for
conspiracy to distribute and possess with intent to distribute
one kilogram or more of heroin, as well as for a violation of
Title 18, U.S.C., Section 924(c)(1)(A), which prohibits the use
of firearms during and in relation to drug trafficking crimes
and the possession of such firearms in furtherance of drug
trafficking crimes.

23.  In my training and experience, firearms are tools of
the drug trafficking trade, and drug dealers, such as Thomas
Hopes, generally keep firearms near their stash of drugs.
Accordingly, there is probable cause to believe that inside of
Thomas Hopes' apartment there will be evidence of heroin
trafficking and/or firearms.

**JAQUAN WASHINGTON RESIDENCE**

24.  On March 6, 2013, Jaquan Washington was indicted for
one-count of conspiracy to possess with intent distribute one
kilogram or more of heroin, amongst other crimes.  Pursuant to a
federal  arrest  warrant  issued  for  that  indictment,  Jaquan
Washington was arrested, on the morning of March 14, 2013, at

17

his residence, located at **2113 Orchard Street (rear), Apt. B, Munhall, PA 15120**.

25. Upon entry into the residence, law enforcement was confronted with the overwhelming smell of fresh marijuana. Marijuana was also found on another individual within the house. When questioned as to whether there was any contraband in the home, Jaquan Washington admitted that there was marijuana in the house.

26. From this evidence, there is probable cause to believe that there is evidence of drug trafficking and drug possession within the apartment occupied by Jaquan Washington. After all, Washington admitted that there was, at the very least, marijuana in the apartment.

### MARK FELDER RESIDENCE

27. On the morning of March 14, 2013, law enforcement arrested Mark Felder at his home at **1003 Kennedy Avenue, Duquesne, PA 15110**. Felder had been indicted for one count of conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, and an arrest warrant had been issued pursuant to that indictment.

28. Felder was arrested in his bedroom as he slept with his girlfriend. Law enforcement conducted a protective sweep of the bedroom incident to Felder's arrest. In the closet of the bedroom was a safe, and next to the safe was a $100 bill. Small

18

rubber bands, typically used to bundle heroin bags, were there as well.  Also in the room were 8 to 10 cellular telephone phones.  In my training and experience, multiple cellular telephones are used by drug dealers in furtherance of their drug trafficking business.

29.  Accordingly, we request a warrant to search the premises for evidence of drug trafficking crimes.  In my training and experience, drug traffickers hold on to large amounts of cash, typically in safes, which is evidence of their drug trafficking crimes.  Heroin trafficking is a cash business. They also use and employ multiple cellular telephones, and for the heroin trade, they use and employ small rubber bands to package this heroin.  Accordingly, there is probable cause to believe that this contraband, and more, will be found in a search of this residence.

### HAKEEM KIRBY RESIDENCE

30.  On the morning of March 14, 2013, law enforcement arrested Hakeem Kirby at his residence, located at **154 West 15th Avenue, Homestead, PA**.  Hakeem Kirby had been indicted for a federal grand jury for one count of conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, amongst other crimes.

31.  At the time of his arrest inside of his home, Hakeem Kirby went to the bathroom and attempted to flush heroin down

19

the toilet. Law enforcement managed to intercept Kirby as he was doing so and recovered a small "bundle" of heroin bags.

32. Accordingly, there is contraband, namely heroin, in this residence. Further, based on my training and experience, generally, when drug dealers attempt to flush or destroy evidence, they are unsuccessful in destroying all the evidence, and some evidence remains behind at the location.

## LUTHER HARPER RESIDENCE

33. On the morning of March 14, 2013, law enforcement went to arrest Luther Harper at his residence, located at **234 East 16th Avenue in Homestead, PA**.

34. While attempting to arrest Harper, law enforcement looked in the open window and viewed ammunition that was sitting on the TV stand. Law enforcement then went inside the house to arrest Harper, and they saw a box of .40 caliber ammunition. Previously, law enforcement had intercepted a call involving Luther Harper, and in this call Harper advised that he tried to have his mother buy him a firearm, but she could not complete the task. Harper then had another person (unknown to law enforcement) buy him a .40 caliber Glock, which he has then carried on his person on multiple occasions. This caliber firearm matches the ammunition found in Harper's residence.

35. Luther Harper is a convicted felon and is not allowed to possess either a firearm or ammunition. *See* 18 U.S.C.

20

Section 922(g)(1).  Accordingly, there is probable cause to
believe evidence of this crime will be found in the house.
Further, drug dealers such as indicted defendant Luther Harper
typically use firearms to protect their cash and their drugs.
Therefore, there is probable cause to believe that such
contraband will also be found in the house.

## CONCLUSION

36.  BASED UPON THE FOREGOING, there is probable cause to
conclude that the search locations identified above - LOCATIONS
A through E - will contain evidence of drug trafficking and
firearms violations, all crimes for which the above named Target
Subjects have been indicted by a grand jury sitting in the
Western District of Pennsylvania on March 6, 2013.  The above
information is true and correct to the best of my knowledge,
information and belief.

John Dziedzic

Special Agent, FBI

Sworn and subscribed before me, this _14_ day of March, 2013.

United States Magistrate Judge

21